Jacques Spira v. Commissioner. Maurice Hymans v. Commissioner. Arnold Spira v. Commissioner. Joseph Hymans v. Commissioner.
Spira v. Commissioner
Docket Nos. 12990, 12991, 12992, 12993.
United States Tax Court
1948 Tax Ct. Memo LEXIS 160; 7 T.C.M. (CCH) 371; T.C.M. (RIA) 48110; June 18, 1948
*160 Harry Kwestel, Esq., 261 Broadway, New York, N. Y., for the petitioners. Whitfield J. Collins, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the income taxes of the petitioners for 1943, in the following amounts: 12990
Jacques Spira
$1,197.38
12991
Maurice Hymans
1,214.52
12992
Arnold Spira
1,205.40
12993
Joseph Hymans
1,193.44 The sole issue is whether the Commissioner erred in holding that the entire net income of Spira & Hymans, a partnership, was taxable to the petitioners rather than to the petitioners and their wives in accordance with their partnership agreement. Findings of Fact The petitioners filed their income tax returns for the calendar year 1943 with the collector of internal revenue for the second district of New York. The petitioners are engaged in the diamond business. Joseph Hymans and Arnold Spira started the business in Antwerp, Belgium, in 1921. They later formed a partnership with their sons, Maurice Hymans and Jacques Spira. All of the petitioners resided in Belgium and were married there. They and their wives were subject to the community *161 property system as established by the Belgian Civil Code. Community property, in the absence of an antenuptial agreement, included all the assets of both spouses except certain realty acquired after marriage. Each wife had a vested porperty right in the assets of the community equal to that of her husband. He was the sole manager of the property, but he had to act so as to protect her interest. Joseph Hymans and his wife were married in 1906. They made no antenuptial agreement. The other three petitioners entered into antenuptial agreements which limited community property to the assets acquired after marriage. Arnold Spira and his wife were married in 1907. His net worth was about $2,000 at the time of the marriage. Jacques Spira married Florence in 1934. His net worth at the time of the marriage was about $7,500. His interest in the firm was increased to 25 per cent after his marriage. Maurice and Suzanne Hymans were married in 1935. He was a partner in the firm and had an interest of 25 per cent at the time of his marriage. His net worth then was about $10,000. The partnership business in Antwerp was terminated by the German invasion in September 1939. The value of the firm's *162 assets at that time was between $700,000 and $750,000. Jacques and Maurice withdrew diamonds valued at about $65,000 which they gave to Florence for safekeeping, because she was an American citizen and under the protection of the American Consul. Joseph, Maurice and Jacques had arrived in New York by December 1940. Arnold arrived in January 1941. Joseph brought with him diamonds valued at about $185,000. Florence brought the diamonds which Jacques and Maurice had given to her. Virtually no other assets of the firm were salvaged from Belgium. The firm had $64,262.45 on deposit with the Guaranty Trust Company of New York. The petitioners entered into business in New York in 1940 by forming a corporation. The corporation was dissolved on July 31, 1942. The petitioners then formed a general partnership. The assets of the corporation were transferred to the partnership. The petitioners were equal partners. None of the wives waived their rights to community property. They wanted to know whether their rights under community property were protected in New York as they had been in Belgium. Florence asked that her capital be placed under her own name. The matter was discussed with the *163 petitioners early in 1943. The petitioners decided to form a limited partnership with their wives as a result of those conversations. The petitioners told their accountant that they wanted to put $25,000 in their wives' names. He advised them to give checks of $25,000 to their wives, and that was done by withdrawing the money from the business. Each of the wives then contributed $25,000 to the limited partnership which was formed on May 1, 1943. The accountant had not been advised that the wives were claiming interests in the business because of their rights under community property. The petitioners, acting on the accountant's advice, filed gift tax returns with respect to the checks for $25,000. However, the checks were intended as transfers of part of the wives' interests to their respective names, and not as gifts. The petitioners and their wives signed a limited partnership agreement on May 1, 1943. The agreement provided in part that the petitioners were general partners; their wives were limited partners; each of the wives contributed $25,000 in cash; and the share of each wife in the profits was 10 per cent of the annual net profits in excess of $20,000. There was no *164 provision for the wives to receive property other than cash in return for their contributions. The assets of the limited partnership in May 1943, were about $391,000. The firm made profits of over $35,000 during the remainder of 1943. $2,249.19 was credited to the account of each wife as her share in the profits under the partnership agreement. None of the wives performed any services for the partnership. Opinion MURDOCK, Judge: The petitioners are Belgians who were driven out of business in Antwerp by the German invasion in the fall of 1939. They all eventually escaped to this country and set up a new business in New York. Their wives, in Belgium, held vested interests in their property as members of a marital community. The wives, after learning that the law in New York was different from that in Belgium, asked that their ownership of a part of the assets being used by the husbands be recognized. That was accomplished by making them limited partners in a partnership. The arrangement was fair and proper. They each contributed capital at least in the amount stated. It was essential to the business. There is no reason for failing to recognize them as limited partners in accordance *165 with their agreement. Decision will be entered under Rule 50.